15-15428

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**BARRY BAUER, et al.,**

Plaintiffs and Appellants,

**v.**

**KAMALA HARRIS, in her official capacity as Attorney General of the State of California, et al.,**

Defendants and Appellees.

On Appeal from the United States District Court
for the Eastern District of California

No. 1:11-cv-01440-LJO-MJS
Hon. Lawrence J. O'Neill, Judge

**APPELLEES' SUPPLEMENTAL EXCERPTS
OF RECORD**

Kamala D. Harris
Attorney General of California
Douglas J. Woods
Senior Assistant Attorney General
Stepan A. Haytayan
Supervising Deputy Attorney General

Anthony R. Hakl
Deputy Attorney General
State Bar No. 197335
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 322-9041
Fax: (916) 324-8835
Email: Anthony.Hakl@doj.ca.gov
*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

1/20/15           Exhibit B to Declaration of Anthony R. Hakl……………………………..1

1/20/15           Declaration of Joel Tochterman in Support of Defendant's Motion for Summary Judgment, or in the Alternative Summary Adjudication………5

1/20/15           Declaration of Anthony R. Hakl in Support of Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication………39.

1/20/15           Plaintiffs' Points and Authorities in Support of Motion for Summary Judgment (partial)…………………………………………………………..42

STATE OF CALIFORNIA — DEPARTMENT OF FINANCE
## ECONOMIC AND FISCAL IMPACT STATEMENT
### (REGULATIONS AND ORDERS)
.O. 399 (Rev. 2-98)                          *See SAM Section 6600 - 6680 for Instructions and Code Citations*

| DEPARTMENT NAME | CONTACT PERSON | TELEPHONE NUMBER |
|---|---|---|
| Justice | Patty Westerinen | 916-263-0851 |
| DESCRIPTIVE TITLE FROM *NOTICE REGISTER* OR FORM 400 | | NOTICE FILE NUMBER |
| | | Z |

## ECONOMIC IMPACT STATEMENT

**A. ESTIMATED PRIVATE SECTOR COST IMPACTS** *(Include calculations and assumptions in the rulemaking record.)*

1. Check the appropriate box(es) below to indicate whether this regulation:

   [✓] a. Impacts businesses and/or employees      [ ] e. Imposes reporting requirements

   [✓] b. Impacts small businesses      [ ] f. Imposes prescriptive instead of performance

   [✓] c. Impacts jobs or occupations      [✓] g. Impacts individuals

   [ ] d. Impacts California competitiveness      [ ] h. None of the above *(Explain below. Complete the Fiscal Impact Statement as appropriate.)*

   h. *(cont.)* _____

   *(If any box in items 1 a through g is checked, complete this Economic Impact Statement.)*

2. Enter the total number of businesses impacted:_____ Describe the types of businesses *(Include nonprofits)*: All California Firearms Dealers, Law Enforcement Agencies, Armed Security Guards and California residents who possess/purchase firearms.

   Enter the number or percentage of total businesses impacted that are small businesses:_____

   Enter the number of businesses that will be created: n/a _____ eliminated: n/a _____

   Explain:_____

4. Indicate the geographic extent of impacts:  [ ] Statewide  [ ] Local or regional *(list areas)*:_____

5. Enter the number of jobs created: n/a _____ or eliminated: n/a _____ Describe the types of jobs or occupations impacted: No jobs will be created or eliminated; however, Firearms Dealers, Armed Security Guards, Law Enforcement and citizens will be impacted.

6. Will the regulation affect the ability of California businesses to compete with other states by making it more costly to produce goods or services here?

   [ ] Yes    [✓] No    If yes, explain briefly:_____

**B. ESTIMATED COSTS** *(Include calculations and assumptions in the rulemaking record.)*

1. What are the total statewide dollar costs that businesses and individuals may incur to comply with this regulation over its lifetime? $ 86,760,000

   a. Initial costs for a small business: $_____ Annual ongoing costs: $_____ Years:_____

   b. Initial costs for a typical business: $ 22 Annual ongoing costs: $ 88,000 Years: 10

   c. Initial costs for an individual: $ 19-22 Annual ongoing costs: $ 8,586,000 Years: 10

   d. Describe other economic costs that may occur: Costs based on 404,000 transactions at fees of $19 to $22.

AG-00249

SER001

## ECONOMIC AND FISCAL IMPACT STATEMENT cont. (STD. 399, Rev. 2-98)

If multiple industries are impacted, enter the share of total costs for each industry: n/a

3. If the regulation imposes reporting requirements, enter the annual costs a typical business may incur to comply with these requirements. *(include the dollar costs to do programming, record keeping, reporting, and other paperwork, whether or not the paperwork must be submitted.):* $ n/a

4. Will this regulation directly impact housing costs? ☐ Yes ☑ No   If yes, enter the annual dollar cost per housing unit: _____ and the number of units: _____

5. Are there comparable Federal regulations? ☐ Yes ☑ No   Explain the need for State regulation given the existence or absence of Federal regulations: Request specific to fee increase only with no other regulatory changes.

Enter any additional costs to businesses and/or individuals that may be due to State - Federal differences: $ 0

### C. ESTIMATED BENEFITS   *(Estimation of the dollar value of benefits is not specifically required by rulemaking law, but encouraged.)*

1. Briefly summarize the benefits that may result from this regulation and who will benefit: All citizens will benefit. This fee increase will allow the State of California to continue providing the level of service necessary to avoid a public safety emergency relative to the purchase/possession of firearms.

2. Are the benefits the result of : ☑ specific statutory requirements, or ☐ goals developed by the agency based on broad statutory authority? Explain: Fees are allowed in statute. This request is for an increase only.

3. What are the total statewide benefits from this regulation over its lifetime? $ n/a

### D. ALTERNATIVES TO THE REGULATION   *(Include calculations and assumptions in the rulemaking record. Estimation of the dollar value of benefits is not specifically required by rulemaking law, but encouraged.)*

1. List alternatives considered and describe them below. If no alternatives were considered, explain why not: No other alternatives are viable. Fees have not been raised since 1991 and the Department is projecting to run out of cash in the Dealers' Record of Sale Special Account in the Spring of 2005.

2. Summarize the total statewide costs and benefits from this regulation and each alternative considered:

| | | |
|---|---|---|
| Regulation: | Benefit: $_____ | Cost: $_____ |
| Alternative 1: | Benefit: $_____ | Cost: $_____ |
| Alternative 2: | Benefit: $_____ | Cost: $_____ |

3. Briefly discuss any quantification issues that are relevant to a comparison of estimated costs and benefits for this regulation or alternatives: n/a

4. Rulemaking law requires agencies to consider performance standards as an alternative, if a regulation mandates the use of specific technologies or equipment, or prescribes specific actions or procedures. Were performance standards considered to lower compliance costs? ☐ Yes ☑ No   Explain: Regulation requests a fee increase only and does not include regulatory changes.

### E. MAJOR REGULATIONS *(Include calculations and assumptions in the rulemaking record.)*
*Cal/EPA boards, offices and departments are subject to the following additional requirements per Health and Safety Code section 57005.*

AG-00250

SER002

**ECONOMIC AND FISCAL IMPACT STATEMENT** *cont. (STD. 399, Rev. 2-98)*

Will the estimated costs of this regulation to California business enterprises exceed $10 million ?  ☐ Yes  ☑ No  *(If No, skip the rest of this section)*

2.  Briefly describe each equally as effective alternative, or combination of alternatives, for which a cost-effectiveness analysis was performed:

Alternative 1: _____

Alternative 2: _____

3.  For the regulation, and each alternative just described, enter the estimated total cost and overall cost-effectiveness ratio:

| | | |
|---|---|---|
| Regulation: | $_____ | Cost-effectiveness ratio: $_____ |
| Alternative 1: | $_____ | Cost-effectiveness ratio: $_____ |
| Alternative 2: | $_____ | Cost-effectiveness ratio: $_____ |

## FISCAL IMPACT STATEMENT

A. FISCAL EFFECT ON LOCAL GOVERNMENT  *(Indicate appropriate boxes 1 through 6 and attach calculations and assumptions of fiscal impact for the current year and two subsequent Fiscal Years)*

☐ 1.  Additional expenditures of approximately $_____ in the current State Fiscal Year which are reimbursable by the State pursuant to Section 6 of Article XIII B of the California Constitution and Sections 17500 et seq. of the Government Code. Funding for this reimbursement:

   ☐ a.  is provided in _____ ,Budget Act of _____ ) or (Chapter _____ ,Statutes o _____

   ☐ b.  will be requested in the _____ Governor's Budget for appropriation in Budget Act of _____
(FISCAL YEAR)

☐ 2.  Additional expenditures of approximately $_____ in the current State Fiscal Year which are not reimbursable by the State pursuant to Section 6 of Article XIII B of the California Constitution and Sections 17500 et seq. of the Government Code because this regulation:

   ☐ a.  implements the Federal mandate contained in _____

   ☐ b.  implements the court mandate set forth by the _____

      court in the case of _____ vs. _____

   ☐ c.  implements a mandate of the people of this State expressed in their approval of Proposition No. _____ at the _____ election;
(DATE)

   ☐ d.  is issued only in response to a specific request from the _____

      _____ , which is are the only local entity(s) affected;

   ☐ e.  will be fully financed from the _____ authorized by Section
(FEES, REVENUE, ETC.)

      _____ of the _____ Code;

   ☐ f.  provides for savings to each affected unit of local government which will, at a minimum, offset any additional costs to each such unit.

☐ 3.  Savings of approximately $_____ annually.

☐ 4.  No additional costs or savings because this regulation makes only technical, non-substantive or clarifying changes to current law regulations.

AG-00251

SER003

## ECONOMIC AND FISCAL IMPACT STATEMENT *cont. (STD. 399, Rev. 2-98)*

☑ 5.  No fiscal impact exists because this regulation does not affect any local entity or program.

☐ 6.  Other.

**B. FISCAL EFFECT ON STATE GOVERNMENT**  *(Indicate appropriate boxes 1 through 4 and attach calculations and assumptions of fiscal impact for the current year and two subsequent Fiscal Years.)*

☑ 1.  Additional expenditures of approximately $ ___0___ in the current State Fiscal Year. It is anticipated that State agencies will:

    ☑ a.  be able to absorb these additional costs within their existing budgets and resources.

    ☐ b.  request an increase in the currently authorized budget level for the _____ fiscal year.

☐ 2.  Savings of of approximately $_____ in the current State Fiscal Year.

☐ 3.  No fiscal impact exists because this regulation does not affect any State agency or program.

☐ 4.  Other.

**C. FISCAL EFFECT ON FEDERAL FUNDING OF STATE PROGRAMS**  *(Indicate appropriate boxes 1 through 4 and attach calculations and assumptions bfiscal impact for the current year and two subsequent Fiscal Years.)*

☐ 1.  Additional expenditures of approximately $_____ in the current State Fiscal Year.

☐ 2.  Savings of of approximately $_____ in the current State Fiscal Year.

☑ 3.  No fiscal impact exists because this regulation does not affect any federally funded State agency or program.

☐ 4.  Other.

| SIGNATURE | TITLE |
|---|---|
| *(signature)* | *Director, ASD* |
| **AGENCY SECRETARY** | **DATE** |
| **APPROVAL/CONCURRENCE** | *10·25·06* |
| | PROGRAM BUDGET MANAGER *(signature)* |
| **DEPARTMENT OF FINANCE** | **DATE** |
| **APPROVAL/CONCURRENCE** | |

1.  The signature attests that the agency has completed the STD. 399 according to the instructions in SAM sections 6600-6680, and understands the impacts of the proposed rulemaking. State boards, offices, or department not under an Agency Secretary must have the form signed by the highest ranking official in the organization.

2.  Finance approval and signature is required when SAM sections 6600-6670 require completion of Fiscal Impact Statement in the STD. 399.

AG-00252

SER004

KAMALA D. HARRIS
Attorney General of California
STEPAN A. HAYTAYAN
Supervising Deputy Attorney General
ANTHONY R. HAKL, State Bar No. 197335
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 322-9041
  Fax: (916) 324-8835
  E-mail: Anthony.Hakl@doj.ca.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BARRY BAUER, STEPHEN WARKENTIN, NICOLE FERRY, LELAND ADLEY, JEFFREY HACKER, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION, HERB BAUER SPORTING GOODS, INC.,** | Case No. 1:11-cv-1440-LJO-MJS <br><br> **DECLARATION OF JOEL TOCHTERMAN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** |
| Plaintiffs, | Date: <br> Time: <br> Dept.: 4, 7th Floor <br> Judge: Hon. Lawrence J. O'Neill <br> Trial Date: March 24, 2015 <br> Action Filed: August 25, 2011 |
| v. | |
| **KAMALA HARRIS, in Her Official Capacity as Attorney General Of the State of California; STEPHEN LINDLEY, in His Official Capacity as Acting Chief for the California Department of Justice, and DOES 1-10,** | |
| Defendants. | |

1

SER005

1      I, Joel Tochterman, declare as follows:

2      1.    I am a Librarian for the Office of the Attorney General in the California Department

3  of Justice, located in Sacramento, California. I have been trained and am familiar with our

4  office's methods for researching and compiling legislative histories. My job duties regularly

5  include collecting legislative history materials for attorneys in this office. I am also custodian of

6  the records retained in the library's files, including legislative histories compiled by our office's

7  trained librarians. I make this declaration in support of defendant's motion for summary

8  judgment, or in the alternative summary adjudication. I have personal knowledge of the facts

9  stated in this declaration, and if called as a witness, I could and would competently testify to

10  them.

11     2.    Trained librarians in our office regularly compile legislative histories when requested

12  to do so by attorneys in the Attorney General's Office. These librarians compile legislative

13  histories of California statutes from the entire history pertaining to the statute as presented,

14  chaptered, and archived as public records by the California Secretary of State, California

15  Legislative Counsel, and other sources of legislative history. After a legislative history has been

16  compiled, we add it to our collection of legislative histories, and retain it in the library's files.

17     3.    On or about December 12, 2014, I located in our collection a legislative history for

18  2011 Senate Bill 819 compiled by a librarian of the Office of the Attorney General. Attached

19  hereto are true and correct copies of selected documents that were part of that legislative history:

20     Exhibit A: The chapter version of Senate Bill 819 (i.e., Cal. Senate Bill 819 (Leno), Stats.

21  2011, 743).

22     Exhibit B: An Assembly Committee Report from the Assembly Committee on Public

23  Safety regarding Senate Bill 819 (i.e., Assem. Com. on Public Safety, Analysis of Senate Bill No.

24  819 (2011-2012 Reg. Sess.) June 21, 2011).

25     Exhibit C: An Assembly Committee Report from the Assembly Committee on

26  Appropriations regarding Senate Bill 819 (i.e., Assem. Com. on Appropriations, Analysis of

27  Senate Bill No. 819 (2011-2012 Reg. Sess.) July 16, 2011).

28

2

SER006

1        Exhibit D. An Senate Committee Report from the Senate Committee on Public Safety

2   regarding Senate Bill 819 (i.e., Sen. Com. on Public Safety, Analysis of Senate Bill No. 819

3   (2011-2012 Reg. Sess.) April 26, 2011).

4        4.    The legislative history documents contained in Exhibits A-D are true and correct

5   copies of the original public records obtained by the designated official from public sources in

6   California, except that for readability purposes, pages may have been enlarged.

7        I declare under penalty of perjury under the laws of the State of California and the United

8   States of America that the foregoing is true and correct of my own personal knowledge, and that

9   this declaration is executed in Sacramento, California, this 20th day of January, 2015.

10

11                                    _____
                                          Joel Tochterman
12

13   SA2011102315
     11636374.doc

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

SER007

# EXHIBIT A

SER008

## Senate Bill No. 819

### CHAPTER 743

An act to amend Section 28225 of the Penal Code, relating to firearms.

[Approved by Governor October 9, 2011. Filed with
Secretary of State October 9, 2011.]

LEGISLATIVE COUNSEL'S DIGEST

SB 819, Leno. Firearms.

Existing law authorizes the Department of Justice to require a firearms dealer to charge each firearm purchaser a fee, as specified, to fund various specified costs in connection with, among other things, a background check of the purchaser, and to fund the costs associated with the department's firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms. The bill would make related legislative findings and declarations.

This bill would also authorize using those charges to fund the department's firearms-related regulatory and enforcement activities related to the possession of firearms, as specified.

*The people of the State of California do enact as follows:*

SECTION 1.   The Legislature finds and declares all of the following:

(a)  California is the first and only state in the nation to establish an automated system for tracking handgun and assault weapon owners who might fall into a prohibited status.

(b)  The California Department of Justice (DOJ) is required to maintain an online database, which is currently known as the Armed Prohibited Persons System, otherwise known as APPS, which cross-references all handgun and assault weapon owners across the state against criminal history records to determine persons who have been, or will become, prohibited from possessing a firearm subsequent to the legal acquisition or registration of a firearm or assault weapon.

(c)  The DOJ is further required to provide authorized law enforcement agencies with inquiry capabilities and investigative assistance to determine the prohibition status of a person of interest.

(d)  Each day, the list of armed prohibited persons in California grows by about 15 to 20 people. There are currently more than 18,000 armed prohibited persons in California. Collectively, these individuals are believed to be in possession of over 34,000 handguns and 1,590 assault weapons. The illegal possession of these firearms presents a substantial danger to public safety.

95

SER009

(e) Neither the DOJ nor local law enforcement has sufficient resources to confiscate the enormous backlog of weapons, nor can they keep up with the daily influx of newly prohibited persons.

(f) A Dealer Record of Sale fee is imposed upon every sale or transfer of a firearm by a dealer in California. Existing law authorizes the DOJ to utilize these funds for firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Section 16580 of the Penal Code, but not expressly for the enforcement activities related to possession.

(g) Rather than placing an additional burden on the taxpayers of California to fund enhanced enforcement of the existing armed prohibited persons program, it is the intent of the Legislature in enacting this measure to allow the DOJ to utilize the Dealer Record of Sale Account for the additional, limited purpose of funding enforcement of the Armed Prohibited Persons System.

SEC. 2.  Section 28225 of the Penal Code is amended to read:

28225.  (a) The Department of Justice may require the dealer to charge each firearm purchaser a fee not to exceed fourteen dollars ($14), except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations.

(b) The fee under subdivision (a) shall be no more than is necessary to fund the following:

(1) The department for the cost of furnishing this information.

(2) The department for the cost of meeting its obligations under paragraph (2) of subdivision (b) of Section 8100 of the Welfare and Institutions Code.

(3) Local mental health facilities for state-mandated local costs resulting from the reporting requirements imposed by Section 8103 of the Welfare and Institutions Code.

(4) The State Department of Mental Health for the costs resulting from the requirements imposed by Section 8104 of the Welfare and Institutions Code.

(5) Local mental hospitals, sanitariums, and institutions for state-mandated local costs resulting from the reporting requirements imposed by Section 8105 of the Welfare and Institutions Code.

(6) Local law enforcement agencies for state-mandated local costs resulting from the notification requirements set forth in subdivision (a) of Section 6385 of the Family Code.

(7) Local law enforcement agencies for state-mandated local costs resulting from the notification requirements set forth in subdivision (c) of Section 8105 of the Welfare and Institutions Code.

(8) For the actual costs associated with the electronic or telephonic transfer of information pursuant to Section 28215.

(9) The Department of Food and Agriculture for the costs resulting from the notification provisions set forth in Section 5343.5 of the Food and Agricultural Code.

95

SER010

—3—                    Ch. 743

(10)  The department for the costs associated with subdivisions (d) and (e) of Section 27560.

(11)  The department for the costs associated with funding Department of Justice firearms-related regulatory and enforcement activities related to the sale, purchase, possession, loan, or transfer of firearms pursuant to any provision listed in Section 16580.

(c)  The fee established pursuant to this section shall not exceed the sum of the actual processing costs of the department, the estimated reasonable costs of the local mental health facilities for complying with the reporting requirements imposed by paragraph (3) of subdivision (b), the costs of the State Department of Mental Health for complying with the requirements imposed by paragraph (4) of subdivision (b), the estimated reasonable costs of local mental hospitals, sanitariums, and institutions for complying with the reporting requirements imposed by paragraph (5) of subdivision (b), the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements set forth in subdivision (a) of Section 6385 of the Family Code, the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements set forth in subdivision (c) of Section 8105 of the Welfare and Institutions Code imposed by paragraph (7) of subdivision (b), the estimated reasonable costs of the Department of Food and Agriculture for the costs resulting from the notification provisions set forth in Section 5343.5 of the Food and Agricultural Code, the estimated reasonable costs of the department for the costs associated with subdivisions (d) and (e) of Section 27560, and the estimated reasonable costs of department firearms-related regulatory and enforcement activities related to the sale, purchase, possession, loan, or transfer of firearms pursuant to any provision listed in Section 16580.

(d)  Where the electronic or telephonic transfer of applicant information is used, the department shall establish a system to be used for the submission of the fees described in this section to the department.

O

95

SER011

# EXHIBIT B

SER012

Date of Hearing:   June 21, 2011
Counsel:             Gabriel Caswell

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Tom Ammiano, Chair

SB 819 (Leno) – As Amended: April 14, 2011

SUMMARY:  Provides that the Department of Justice (DOJ) may use dealer record of sale (DROS) funds for costs associated with its firearms-related regulatory and enforcement activities regarding the possession, as well as the sale, purchase, loan, or transfer, of firearms, as specified. Specifically, this bill:

1)  Authorizes the using the DOJ purchaser fee to fund the DOJ's firearms-related regulatory and enforcement activities related to the possession of firearms.

2)  Makes the following findings and declarations:

   a)  California is the first and only state in the nation to establish an automated system for tracking handgun and assault weapon owners who might fall into a prohibited status.

   b)  DOJ is required to maintain an online database, which is currently known as the "Armed Prohibited Persons System" (APPS), which cross-references all handgun and assault weapon owners across the state against criminal history records to determine persons who have been, or will become, prohibited from possessing a firearm subsequent to the legal acquisition or registration of a firearm or assault weapon.

   c)  The DOJ is further required to provide authorized law enforcement agencies with inquiry capabilities and investigative assistance to determine the prohibition status of a person of interest.

   d)  Each day, the list of armed prohibited persons in California increases by about 15 to 20 people.  There are currently more than 18,000 armed prohibited persons in California. Collectively, these individuals are believed to be in possession of over 34,000 handguns and 1,590 assault weapons.  The illegal possession of these firearms presents a substantial danger to public safety.

   e)  Neither the DOJ nor local law enforcement has sufficient resources to confiscate the enormous backlog of weapons, nor can they keep up with the daily influx of newly prohibited persons.

   f)  A DROS fee is imposed upon every sale or transfer of a firearm by a dealer in California. Existing law authorizes the DOJ to utilize these funds for firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Penal Code Section 16580, but not expressly for the enforcement activities related to possession.

g) Rather than placing an additional burden on the taxpayers of California to fund enhanced enforcement of the existing armed prohibited persons program, it is the intent of the Legislature in enacting this bill to allow the DOJ to utilize the DROS Account for the additional, limited purpose of funding enforcement of the APPS.

## EXISTING LAW:

1) States that it shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to persons if that person is under indictment or has been convicted of specified crimes, is under a restraining order, has been committed to a mental institution, and other specified disqualifying factors. (18 U.S.C. Section 922.)

2) Requires that persons who sell, lease, or transfer firearms be licensed by California. (Penal Code Sections 26500 and 26700, et seq.)

3) Sets forth a series of requirements to be state licensed by DOJ, which provides that to be recognized as state licensed, a person must be on a centralized list of gun dealers and allows access to the centralized list by authorized persons for various reasons. (Penal Code Section 26700.)

4) Requires that firearms dealers obtain certain identifying information from firearms purchasers and forward that information, via electronic transfer to DOJ to perform a background check on the purchaser to determine whether he or she is prohibited from possessing a firearm. The record of applicant information must be transmitted to the DOJ in Sacramento by electronic transfer on the date of the application to purchase. The original of each record of electronic transfer shall be retained by the dealer in consecutive order. Each original shall become the permanent record of the transaction that shall be retained for not less than three years from the date of the last transaction and shall be provided for the inspection of any peace officer, DOJ employee designated by the Attorney General, or agent of the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives upon the presentation of proper identification, but no information shall be compiled therefrom regarding the purchasers or other transferees of firearms that are not pistols, revolvers, or other firearms capable of being concealed upon the person. (Penal Code Sections 28160 to 28220.)

5) Requires handguns to be centrally registered at time of transfer or sale by way of transfer forms centrally compiled by the DOJ. DOJ is required to keep a registry from data sent to DOJ indicating who owns what handgun by make, model, and serial number and the date thereof. [Penal Code Section 11106(a) and (c).]

6) Requires that, upon receipt of the purchaser's information, DOJ shall examine its records, as well as those records that it is authorized to request from the California Department of Mental Health (DMH) pursuant to Welfare and Institutions Code (WIC) Section 8104, in order to determine if the purchaser is prohibited from purchasing a firearm because of a prior felony conviction or because they had previously purchased a handgun within the last 30 days, or because they had received inpatient treatment for a mental health disorder, as specified. (Penal Code Section 28220.)

7) States that, to the extent funding is available, DOJ may participate in the National Instant Criminal Background Check System (NICS), as specified, and, if that participation is

SER014

implemented, shall notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, that the purchaser is a person prohibited from acquiring a firearm under federal law. (Penal Code Section 28220.)

8) States that if DOJ determines that the purchaser is prohibited from possessing a firearm, as specified, it shall immediately notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact. (Penal Code Section 28220.)

9) States that no person who has been taken into custody, found to be a danger to himself, herself, or others, and, as a result, admitted to a specified mental health facility, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility, except as specified. [WIC Section 8103(f)(1).] For each such person, the facility shall immediately, on the date of admission, submit a report to DOJ, on a form prescribed by DOJ, containing information that includes, but is not limited to, the identity of the person and the legal grounds upon which the person was admitted to the facility. [WIC Section 8103(f)(2)(A).]

10) No person who has been certified for intensive treatment for a mental disorder, as specified, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years and relevant treatment facilities shall report the identities of such persons to DOJ, as specified. [WIC Section 8103(g).]

11) DOJ may require the dealer to charge each firearm purchaser a fee not to exceed $14, except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations. This fee, known as the Dealer Record of Sale or DROS fee, shall be no more than is necessary to fund the following:

a) DOJ for the cost of furnishing this information.

b) DOJ for the cost of meeting its obligations to notify specified persons that they are prohibited from owning firearms due to their receiving inpatient treatment for a mental disorder.

c) Local mental health facilities for state-mandated local costs resulting from the specified reporting requirements.

d) The DMH for the costs resulting from the specified requirements imposed.

e) Local mental hospitals, sanitariums, and institutions for state-mandated local costs resulting from the specified reporting requirements.

f)   Local law enforcement agencies for state-mandated local costs resulting from the notification requirements regarding service of restraining orders, as specified.

g)   Local law enforcement agencies for state-mandated local costs resulting from the notification requirements regarding specified persons prohibited from owning firearms due to their receiving inpatient treatment for a mental disorder.

h)   For the actual costs associated with the electronic or telephonic transfer of information, as specified.

i)   The Department of Food and Agriculture for the costs resulting from the notification provisions regarding importing firearms into the state, as specified.

j)   DOJ for the costs associated with public education requirements regarding importation of firearms into California, as specified.

k)   DOJ for the costs associated with funding DOJ firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Section 16580. [Penal Code Section 28225(a) and (b).]

12) The fee established pursuant to this section shall not exceed the sum of the actual processing costs of the DOJ, the estimated reasonable costs of the local mental health facilities for complying with the reporting requirements imposed as specified, the costs of DMH for complying with the requirements imposed as specified, the estimated reasonable costs of local mental hospitals, sanitariums, and institutions for complying with the reporting requirements imposed as specified, the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements, as specified, the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements imposed as specified, the estimated reasonable costs of the Department of Food and Agriculture for the costs resulting from the specified notification provisions, the estimated reasonable costs of the DOJ for the costs associated with public education requirements regarding importation of firearms into California, and the estimated reasonable costs of DOJ firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to specified provisions of law pertaining to firearms. [Penal Code Section 28225(c).]

13) DOJ may charge a fee sufficient to reimburse it for each of the following but not to exceed $14, except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations:

a)   For the actual costs associated with the preparation, sale, processing, and filing of forms or reports required or utilized pursuant to any provision listed in Penal Code Section 16585(a).

b)   For the actual processing costs associated with the submission of a DROS to the DOJ.

c) For the actual costs associated with the preparation, sale, processing, and filing of reports utilized pursuant to Penal Code Section 26905, 27565, or 28000, or 27560(1)(a).

d) For the actual costs associated with the electronic or telephonic transfer of information pursuant to Penal Code Section 28215.

e) Any costs incurred by the DOJ to implement this section shall be reimbursed from fees collected and charged pursuant to this section. No fees shall be charged to the dealer pursuant to Penal Code Section 28225 for implementing this section. (Penal Code Section 28230.)

14) All money received by the DOJ pursuant to this article shall be deposited in the DROS Special Account of the General Fund, which is hereby created, to be available, upon appropriation by the Legislature, for expenditure by the DOJ to offset the costs incurred pursuant to any of the following:

a) This article.

b) Annual inspections of permitted destructive devices. (Penal Code Section 18910.)

c) Regulating firearms transaction between licensed dealers. (Penal Code Section 27555.)

d) Conduct public education and notification programs regarding importation of firearms into California. [Penal Section 27560(d) and (e).]

e) Maintain a list of federally licensed firearms dealers in California exempt from the state dealer licensing requirements, as specified. [Penal Code Section 28450 et seq.]

f) Inspection of inventory of licensed firearms dealers. (Penal Code Section 31110.)

g) Public education and notification programs regarding registration of assault weapons. (Penal Code Section 31115.)

h) Retesting of handguns on the not unsafe handgun list, as specified. [Penal Code Section 32020(a).]

i) Inspection of inventories of machine guns held under permit. (Penal Code Section 32670.)

j) Inspection of inventories of short-barreled shotguns and rifles held under permit. (Penal Code Sections 33320 and 28235.)

15) States the Attorney General shall establish and maintain an online database to be known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm on or after January 1, 1991, as indicated by a record in the Consolidated Firearms Information System, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm. The information contained in the Prohibited Armed Persons File shall only be available to specified entities through the California Law

Enforcement Telecommunications System, for the purpose of determining if persons are armed and prohibited from possessing firearms. (Penal Code Section 30000.)

<u>FISCAL EFFECT</u>: Unknown

<u>COMMENTS</u>:

1) <u>Author's Statement</u>: "SB 819 will amend the Penal Code to allow the DOJ to use existing Department resources to provide enhanced enforcement of the APPS which has identified over 36,000 handguns and assault weapons in the hands of more than 18,000 prohibited persons such as convicted felons and the mentally ill.

"Recently, the New York Times reported on California's Armed Prohibited Persons File and the problems it seeks to address:

"By law, Roy Perez should not have had a gun three years ago when he shot his mother 16 times in their home in Baldwin Park, Calif., killing her, and then went next door and killed a woman and her 4-year-old daughter.

"Mr. Perez, who pleaded guilty to three counts of murder and was sentenced last year to life in prison, had a history of mental health issues. As a result, even though in 2004 he legally bought the 9-millimeter Glock 26 handgun he used, at the time of the shootings his name was in a statewide law enforcement database as someone whose gun should be taken away, according to the authorities.

"The case highlights a serious vulnerability when it comes to keeping guns out of the hands of the mentally unstable and others, not just in California but across the country.

"In the wake of the Tucson shootings, much attention has been paid to various categories of people who are legally barred from buying handguns — those who have been 'adjudicated as a mental defective,' have felony convictions, have committed domestic violence misdemeanors and so on. The focus has almost entirely been on gaps in the federal background check system that is supposed to deny guns to these prohibited buyers.

"There is, however, another major blind spot in the system.

"Tens of thousands of gun owners, like Mr. Perez, bought their weapons legally but under the law should no longer have them because of subsequent mental health or criminal issues. In Mr. Perez's case, he had been held involuntarily by the authorities several times for psychiatric evaluation, which in California bars a person from possessing a gun for five years.

"Policing these prohibitions is difficult, however, in most states. The authorities usually have to stumble upon the weapon in, say, a traffic stop or some other encounter, and run the person's name through various record checks.

"California is unique in the country, gun control advocates say, because of its computerized database, the APPS. It was created, in part, to enable law enforcement officials to handle the issue pre-emptively, actively identifying people who legally bought handguns, or registered

SER018

assault weapons, but are now prohibited from having them.

"The list had 18,374 names on it as of the beginning of this month — 15 to 20 are added a day — swamping law enforcement's ability to keep up. Some police departments admitted that they had not even tried.

"SB 819 addresses the critical need to enforce existing firearm prohibition laws. Increased confiscation of unlawfully possessed firearms could result in the prevention of future crimes and potentially major future cost savings associated with avoided prosecution and incarceration. This bill is strongly supported local law as well organizations working to reduce firearms violence in our communities."

2) Background: According to the background provided by the author, SB 819 will amend the Penal Code to allow DOJ to use existing DOJ resources to provide enhanced enforcement of the APPS which has identified over 36,000 handguns and assault weapons in the hands of more than 18,000 prohibited persons such as convicted felons and the mentally ill. SB 819 addresses the critical need to enforce existing firearm prohibition laws.

Enforcement of existing firearms laws are a critical component of the state's responsibility to ensure public safety. However, there is a huge blind spot in the system. Tens of thousands of gun owners bought their weapons legally, but under law should no longer have them due to subsequent mental health or criminal issues. In fact, every day, the list of armed prohibited persons in California grows by about 15 to 20 people. As of Mach 22, 2011, the Bureau of Firearms identified 18,377 individuals with a prior felony conviction or mental health disorder that disqualified them from possessing more than 36,000 firearms.

"Although DOJ and local law enforcement have the authority to confiscate these weapons in the interest of public safety, the truth is, the situation continues to get worse. Law enforcement is struggling to disarm people who've lost the right to own a gun. Neither DOJ nor the locals have the resources to confiscate the enormous backlog of weapons, nor can they keep up with the daily influx of the newly prohibited."

3) Armed Prohibited Persons System: California is the first and only state in the nation to establish an automated system for tracking handgun and assault weapon owners who pose a threat to public safety. The APPS maintains information about persons who have been, or will become, prohibited from possessing a firearm subsequent to the legal acquisition or registration of a firearm or an assault weapon. The APPS also provides authorized law enforcement agencies with inquiry capabilities to determine the prohibition status of a person of interest. DOJ populates APPS with all handgun and assault weapon owners across the state and matches them against criminal history records to determine who might fall into a prohibited status. Automatic notifications from state and federal criminal history systems will be received daily to determine if there is a match for a current California gun owner. When a match is found, the system automatically raises a flag to Firearms Division staff, which triggers an investigation into the person's status.

For example, the daily APPS report for March 22, 2011 provided a breakdown of prohibited persons by county. A few examples include: Orange County - 1, 163 prohibited persons with 2,488 illegal handguns; Sacramento County - 516 prohibited persons with 1,037 illegal

handguns; and San Diego County - 841 prohibited persons with 1,841 illegal handguns

4) <u>DOJ's Role in APPS Enforcement</u>: Although the burden for confiscating weapons falls largely on local jurisdictions, in practice, most local jurisdictions are too short on resources to do much or only vaguely aware of how the APPS database works. In fact, 98% of the individuals removed from the list are a result of DOJ efforts, not local law enforcement. While DOJ provides locals with access to the list of prohibited persons and has trained more than 1,300 officers in its use, DOJ's own team of 20 agents specifically tasked with investigating and confiscating the weapons of unlawful gun owners has proven to be the most effective.

For example, in Los Angeles County, a jurisdiction with 5,871 prohibited persons, local law enforcement was only able to confiscate weapons in six cases. DOJ was able to confiscate weapons in 76 cases.

5) <u>Argument in Support</u>: According to the <u>Legal Community Against Violence</u>, "[u]nder current law, DOJ is authorized to require firearms dealers to impose a fee attached to the purchase of a firearm; under state law, the fees, collected in the Dealers' Record of Sale Special Account of the General Fund ('DROS Fund'), may be used to fund a specific set of purposes, including DOJ 'regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms.' SB 819 (Leno) would authorize the use of the DROS Fund for enforcement activities related to the possession of firearms.

"DOJ maintains an APPS, which identifies individuals who legally purchased handguns or assault weapons but subsequently because prohibited from possessing firearms. APPS presently contains the names of over 18,000 Californians in possession of over 36,000 handguns and assault weapons, even though these individuals are prohibited from having guns under state law. The 18,000 prohibited persons include convicted felons, domestic abusers and mentally ill individuals, among others who have been convicted of serious crimes that rightfully disqualify them from firearm ownership. State efforts to disarm prohibited individuals are currently funded through the General Fund. SB 819 would enable the use of DROS Fund money for this important purpose."

6) <u>Argument in Opposition</u>: According to the <u>California Association of Firearms Retailers</u> (CAFR), "[t]he money paid to the DROS fund by a prospective purchaser or other transferee of a firearm is a fee to pay for the costs of a criminal and mental history background check to determine that person's eligibility to lawfully possess a firearm.

"The DROS fee is not a regulatory fee, tax, license or other form of non-user charge. CAFR believes that the DROS fund has often been improperly used to fund non-background check activities of DOJ.

"The use of DROS fees as proposed in SB 819 is considered to constitute a tax on perspective firearm purchasers since it would be used, in part, to pay for the general public services proposed in the bill, rather than for its original intended purpose as a user fee to pay for services rendered only to the fee payer."

7) <u>Prior Legislation</u>: AB 302 (Beall), Statutes of 2010, Chapter 344, required the electronic submission of specified information to DOJ with respect to persons admitted to a mental

health facility on the basis of being a threat to themselves or others, or as a result of being certified for intensive treatment.

REGISTERED SUPPORT / OPPOSITION:

Support

Association for Los Angeles Deputy Sheriffs
California Chapters of the Brady Campaign
California Department of Justice
California State Sheriffs' Association
California Statewide Law Enforcement Association
Legal Community Against Violence
Los Angeles County Sheriff's Department
Riverside Sheriffs' Association

Opposition

California Association of Firearms Retailers
California Rifle and Pistol Association
California Sportsman's Lobby
Crossroads of the West
Gun Owners of California
National Rifle Association of America
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
One private individual

Analysis Prepared by:   Gabriel Caswell / PUB. S. / (916) 319-3744

# EXHIBIT C

SER022

Date of Hearing:   July 6, 2011

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Felipe Fuentes, Chair

SB 819 (Leno) – As Amended:  April 14, 2011

Policy Committee:  Public Safety                                   Vote:     5-2

Urgency:  No        State Mandated Local Program:  No           Reimbursable:

## SUMMARY

This bill specifies that the Department of Justice (DOJ) may use existing gun purchaser fees
(known as the dealer record of sale (DROS)) for costs associated with its firearms-related
regulatory and enforcement activities regarding <u>possession</u>, in addition to costs associated with
the explicitly referenced sale, purchase, loan, or transfer, of firearms.

This bill also makes a series of findings and declarations, including:

1) "A Dealer Record of Sale fee is imposed upon every sale or transfer of a firearm by a dealer
   in California.  Existing law authorizes the DOJ to utilize these funds for firearms-related
   regulatory and enforcement activities related to the sale, purchase, loan, or transfer of
   firearms pursuant to any provision listed in Penal Code Section 16580, but not expressly for
   the enforcement activities related to possession." (Penal Code Section 16580 references
   possession issues.)

2) "Rather than placing an additional burden on the taxpayers of California to fund enhanced
   enforcement of the existing armed prohibited persons program, it is the intent of the
   Legislature in enacting this bill to allow the DOJ to utilize the Dealer Record of Sale Account
   for the additional, limited purpose of funding enforcement of the Armed Prohibited Persons
   System."

## FISCAL EFFECT

Significant ongoing increase in the use of existing DROS fees, in the range of $1 million.

This bill does not appropriate funds or raise a fee. It explicitly authorizes the use of DROS
funding for an additional purpose. According to DOJ, the sponsor of this bill, upon passage of
this bill, DOJ will pursue a Budget Change Proposal (BCP) for the 2012-13 budget bill to fund
Armed Prohibited Persons System (APPS) efforts from the DROS fund. DOJ estimates that BCP
will request about $1 million for special agents to assist other agents and local law enforcement
in APPS sweeps.

In addition, DOJ states it will seek one-time funds of about $500,000 for APPS DOJ task forces.

Currently there is a DROS reserve of about $5.5 million. This assumes a one-time $11.5 million
budget transfer to the GF.

COMMENTS

1) Rationale. The author's intent is to clarify that DOJ may use existing department resources to help enforce the APPS to keep guns out of the hands of the more than 18,000 persons who are on California's Prohibited Armed Persons File due to mental illness, felony convictions, or gun-related convictions.

   According to the author, "It is in everyone's interest to ensure that firearms are not in the possession of prohibited persons. However, law-abiding firearms owners have a particularly strong interest in this to help avoid gun ownership from becoming strongly associated with the random acts of deranged individuals. Moreover, the purpose of the bill is to strengthen enforcement of **existing** guns laws. A prospective gun owner pays a fee to determine whether he or she is eligible to purchase a gun (background check), it makes sense that the fee should apply to enforcement when those same individuals become "ineligible" due to criminal behavior or mental illness. Accordingly, there is a very close nexus between the DROS fund and the bill's intended purpose. Moreover, the bill is aligned with gun advocates' stated interest in heightened enforcement of existing gun laws and the alternative would be to place this additional burden on the tax payer at large."

2) DOJ's Armed Prohibited Persons System, the only such system in the nation, has identified 18,700 prohibited persons and 36,300 guns associated with these persons (June 2011 statistics). The APPS maintains information about persons who are, or will be, prohibited from possessing a firearm subsequent to the legal acquisition or registration of a firearm or an assault weapon. The APPS also provides authorized law enforcement agencies with inquiry capabilities to determine the prohibition status of a person of interest.

3) Supporters, including a list of law enforcement agencies, cite the growing list of prohibited persons and the underutilization of APPS, largely due to a lack of state and local resources. While disarming prohibited persons is largely a local law enforcement responsibility, local law enforcement welcomes DOJ's intent to assist them via task forces and sweeps.

4) Opponents, generally gun enthusiasts, object to using DROS fees for what they see as expansive purposes.

Analysis Prepared by:    Geoff Long / APPR. / (916) 319-2081

SER024

# EXHIBIT D

SER025

**SENATE COMMITTEE ON PUBLIC SAFETY**
Senator Loni Hancock, Chair                    S
2011-2012 Regular Session                      B

8
1
9

SB 819 (Leno)
As Amended April 14, 2011
Hearing date:  April 26, 2011
Penal Code
SM:dl

USES OF DEALER RECORD OF SALE FUNDS

HISTORY

Source:        Attorney General Kamala D. Harris

Prior Legislation:   AB 302 (Beall) – Chap. 344, Stats. Of 2010
                     AB 161 (Steinberg) – Chap. 754, Stats. of 2003
                     AB 950 (Brulte) – Chap. 944, Stats. of 2001

Support:       Association for Los Angeles Deputy Sheriffs; Riverside Sheriffs' Association;
               California Chapters of the Brady Campaign to Prevent Gun Violence; California
               State Sheriffs' Association; Statewide Law Enforcement Association; Legal
               Community Against Violence

Opposition:    California Association of Firearms Retailers; California Rifle and Pistol
               Association; California Sportsman's' Lobby, Inc.; Crossroads of the West;
               National Rifle Association; National Shooting Sports Foundation Inc.; Outdoor
               Sportsmen's Coalition of California; Safari Club International

---

KEY ISSUE

SHOULD THE DEPARTMENT OF JUSTICE BE AUTHORIZED TO USE DEALER
RECORD OF SALE FUNDS FOR COSTS ASSOCIATED WITH ITS FIREARMS-RELATED
REGULATORY AND ENFORCEMENT ACTIVITIES REGARDING THE POSSESSION AS
WELL AS THE SALE, PURCHASE, LOAN, OR TRANSFER OF FIREARMS, AS
SPECIFIED?

---

(More)

## PURPOSE

*The purpose of this bill is to provide that the Department of Justice may use dealer record of sale (DROS) funds for costs associated with its firearms-related regulatory and enforcement activities regarding the possession as well as the sale, purchase, loan, or transfer of firearms, as specified.*

<u>Existing Federal law</u> states that it shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to persons if that person is under indictment or has been convicted of specified crimes, is under a restraining order, has been committed to a mental institution, and other specified disqualifying factors. (18 U.S.C. § 922.)

<u>Existing California law</u>:

- Requires that persons who sell, lease, or transfer firearms be licensed by California. (Penal Code §§ 26500 and 26700, et seq.[1])

- Sets forth a series of requirements to be state licensed by DOJ, which provides that to be recognized as state licensed, a person must be on a centralized list of gun dealers and allows access to the centralized list by authorized persons for various reasons. (Penal Code § 26700.)

- Requires that firearms dealers obtain certain identifying information from firearms purchasers and forward that information, via electronic transfer to DOJ to perform a background check on the purchaser to determine whether he or she is prohibited from possessing a firearm. The record of applicant information must be transmitted to the Department of Justice in Sacramento by electronic transfer on the date of the application to purchase. The original of each record of electronic transfer shall be retained by the dealer in consecutive order. Each original shall become the permanent record of the transaction that shall be retained for not less than three years from the date of the last transaction and shall be provided for the inspection of any peace officer, Department of Justice employee designated by the Attorney General, or agent of the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives upon the presentation of proper identification, but no information shall be compiled therefrom regarding the purchasers or other transferees of firearms that are not pistols, revolvers, or other firearms capable of being concealed upon the person. (Pen Code § 28160-28220.)

- Requires handguns to be centrally registered at time of transfer or sale by way of transfer forms centrally compiled by the DOJ. DOJ is required to keep a registry from data sent to

---

[1] SB 1080, Chap. 711, Stats. 2010, and SB 1115, Chap. 178, Stats. 2010, recast and renumbered most statutes relating to deadly weapons without any substantive change to those statutes. Those changes will become operative January 1, 2012. All references to affected code sections will be to the revised version unless otherwise indicated.

(More)

SER027

DOJ indicating who owns what handgun by make, model, and serial number and the date thereof. (Penal Code § 11106(a) and (c).)

- Requires that, upon receipt of the purchaser's information, DOJ shall examine its records, as well as those records that it is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine if the purchaser is prohibited from purchasing a firearm because of a prior felony conviction or because they had previously purchased a handgun within the last 30 days, or because they had received inpatient treatment for a mental health disorder, as specified. (Penal Code § 28220.)

- States that, to the extent funding is available, the Department of Justice may participate in the National Instant Criminal Background Check System (NICS), as specified, and, if that participation is implemented, shall notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, that the purchaser is a person prohibited from acquiring a firearm under federal law. (Penal Code § 28220.)

- States that if the department determines that the purchaser is prohibited from possessing a firearm, as specified, it shall immediately notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact. (Penal Code § 28220.)

- States that no person who has been taken into custody, found to be a danger to himself, herself, or others, and, as a result, admitted to a specified mental health facility, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility, except as specified. (Welfare and Institutions Code § 8103(f)(1).) For each such person, the facility shall immediately, on the date of admission, submit a report to the Department of Justice, on a form prescribed by the Department of Justice, containing information that includes, but is not limited to, the identity of the person and the legal grounds upon which the person was admitted to the facility. (Welfare and Institutions Code § 8103(f)(2)(A).)

- No person who has been certified for intensive treatment for a mental disorder, as specified, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years and relevant treatment facilities shall report the identities of such persons to DOJ, as specified. (Welfare and Institutions Code § 8103(g).)

- The Department of Justice may require the dealer to charge each firearm purchaser a fee not to exceed $14, except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial

(More)

Relations. This fee, known as the Dealer Record of Sale or DROS fee, shall be no more than is necessary to fund the following:

- o The department for the cost of furnishing this information.

- o The department for the cost of meeting its obligations to notify specified persons that they are prohibited from owning firearms due to their receiving inpatient treatment for a mental disorder.

- o Local mental health facilities for state-mandated local costs resulting from the specified reporting requirements.

- o The State Department of Mental Health for the costs resulting from the specified requirements imposed.

- o Local mental hospitals, sanitariums, and institutions for state-mandated local costs resulting from the specified reporting requirements.

- o Local law enforcement agencies for state-mandated local costs resulting from the notification requirements regarding service of restraining orders, as specified.

- o Local law enforcement agencies for state-mandated local costs resulting from the notification requirements regarding specified persons prohibited from owning firearms due to their receiving inpatient treatment for a mental disorder.

- o For the actual costs associated with the electronic or telephonic transfer of information, as specified.

- o The Department of Food and Agriculture for the costs resulting from the notification provisions regarding importing firearms into the state, as specified.

- o The department for the costs associated with public education requirements regarding importation of firearms into California, as specified.

- o The department for the costs associated with funding Department of Justice firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Section 16580.

(Penal Code § 28225(a) – (b).)

- The fee established pursuant to this section shall not exceed the sum of the actual processing costs of the department, the estimated reasonable costs of the local mental health facilities for complying with the reporting requirements imposed as specified, the costs of the State

(More)

Department of Mental Health for complying with the requirements imposed as specified, the estimated reasonable costs of local mental hospitals, sanitariums, and institutions for complying with the reporting requirements imposed as specified, the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements, as specified, the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements imposed as specified, the estimated reasonable costs of the Department of Food and Agriculture for the costs resulting from the specified notification provisions, the estimated reasonable costs of the department for the costs associated with public education requirements regarding importation of firearms into California, and the estimated reasonable costs of department firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to specified provisions of law pertaining to firearms. (Penal Code § 28225(c).)

- The Department of Justice may charge a fee sufficient to reimburse it for each of the following but not to exceed fourteen dollars ($14), except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations:

    o For the actual costs associated with the preparation, sale, processing, and filing of forms or reports required or utilized pursuant to any provision listed in subdivision (a) of Section 16585.

    o For the actual processing costs associated with the submission of a Dealers' Record of Sale to the department.

    o For the actual costs associated with the preparation, sale, processing, and filing of reports utilized pursuant to Section 26905, 27565, or 28000, or paragraph (1) of subdivision (a) of Section 27560.

    o For the actual costs associated with the electronic or telephonic transfer of information pursuant to Section 28215.

    o Any costs incurred by the Department of Justice to implement this section shall be reimbursed from fees collected and charged pursuant to this section. No fees shall be charged to the dealer pursuant to Section 28225 for implementing this section.

(Penal Code § 28230.)

- All money received by the department pursuant to this article shall be deposited in the Dealers' Record of Sale Special Account of the General Fund, which is hereby created, to be available, upon appropriation by the Legislature, for expenditure by the department to offset the costs incurred pursuant to any of the following:

(More)

- o This article.

- o Annual inspections of permitted destructive devices. (See § 18910.)

- o Regulating firearms transaction between licensed dealers (See § 27555.)

- o Conduct public education and notification programs regarding importation of firearms into the state. (See § 27560(d) and (e).)

- o Maintain a list of federally licensed firearms dealers in California exempt from the state dealer licensing requirements, as specified. (See Article 6 (commencing with Section 28450).

- o Inspection of inventory of licensed firearms dealers. (See §31110.)

- o Public education and notification programs regarding registration of assault weapons. (See § 31115.)

- o Retesting of handguns on the not unsafe handgun list, as specified. ( See § 32020(a).)

- o Inspection of inventories of machine guns held under permit. (See § 32670.)

- o Inspection of inventories of short-barreled shotguns and rifles held under permit (See § 33320.)(Penal Code § 28235.)

- The Attorney General shall establish and maintain an online database to be known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm on or after January 1, 1991, as indicated by a record in the Consolidated Firearms Information System, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm.

- The information contained in the Prohibited Armed Persons File shall only be available to specified entities through the California Law Enforcement Telecommunications System, for the purpose of determining if persons are armed and prohibited from possessing firearms. (Penal Code § 30000.)

This bill would provide that DOJ may use dealer record of sale (DROS) funds for costs associated with its firearms-related regulatory and enforcement activities regarding the *possession* as well as the sale, purchase, loan, or transfer of firearms, as specified.

This bill would make specified findings and declarations.

(More)

SER031

### *RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION*

For the last several years, severe overcrowding in California's prisons has been the focus of evolving and expensive litigation.  As these cases have progressed, prison conditions have continued to be assailed, and the scrutiny of the federal courts over California's prisons has intensified.

On June 30, 2005, in a class action lawsuit filed four years earlier, the United States District Court for the Northern District of California established a Receivership to take control of the delivery of medical services to all California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR").  In December of 2006, plaintiffs in two federal lawsuits against CDCR sought a court-ordered limit on the prison population pursuant to the federal Prison Litigation Reform Act.  On January 12, 2010, a three-judge federal panel issued an order requiring California to reduce its inmate population to 137.5 percent of design capacity -- a reduction at that time of roughly 40,000 inmates -- within two years.  The court stayed implementation of its ruling pending the state's appeal to the U.S. Supreme Court.

On Monday, June 14, 2010, the U.S. Supreme Court agreed to hear the state's appeal of this order and, on Tuesday, November 30, 2010, the Court heard oral arguments.  A decision is expected as early as this spring.

In response to the unresolved prison capacity crisis, in early 2007 the Senate Committee on Public Safety began holding legislative proposals which could further exacerbate prison overcrowding through new or expanded felony prosecutions.

This bill does not appear to aggravate the prison overcrowding crisis described above.

### COMMENTS

1.  Need for This Bill

According to the author:

> The California Department of Justice (DOJ) maintains APPS, an online database, to cross-reference persons who have ownership or possession of a firearm, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from having a firearm. Authorized law enforcement agencies have access to APPS.  DOJ populates APPS with all handgun and assault weapon owners across the state and matches them against criminal history records to determine who might fall into a prohibited status.  When a match is found, the system automatically raises a flag. APPS, further, interfaces with the Automated Firearms System and identifies the

(More)

SER032

handguns and assault[2] weapons in that prohibited individual's possession. In theory, local agencies and DOJ would then confiscate the weapons. When local agencies confiscate weapons, notice is sent to DOJ so that the individual can be removed from the list.

APPS is currently funded through the general fund. There is, however, an account that holds the fees charged by dealers for each firearm purchase. This is called the Dealer Record of Sale (DROS) account. Penal Code section 12076 allows the Department of Justice to use this account to fund firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to this chapter. Penal Code section 12076, however, does not fund DOJ or local agencies to confiscate unlawfully possessed firearms.

There are currently more than 18,000 armed prohibited people statewide, including convicted felons. 30 to 35 percent of prohibited people have been adjudicated mentally ill. Armed prohibited people are believed to hold up to 34,101 handguns and 1,590 assault weapons. Every day there are an additional 15 to 20 individuals added to APPS. Despite their best efforts, local and State law enforcement agencies do not have the funding or resources to keep up with this influx.

2. Background – The Prohibited Armed Persons File

In 2001, the Legislature created the Prohibited Armed Persons File to ensure otherwise prohibited persons do not continue to possess firearms. (SB 950 (Brulte), Chapter 944, Statutes of 2001.) The purpose of the file is to cross-reference persons who have ownership or possession of a firearm on or after January 1, 1991, as indicated by a record in the Consolidated Firearm Information System, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm. (Penal Code § 30000(a).) According to DOJ, in July 2003, it received funding to build a database of this information – the Armed and Prohibited Persons System – which became operational in 2006 and made fully available to local law enforcement in 2007.

SB 950 also mandated that DOJ provide investigative assistance to local law enforcement agencies to better insure the investigation of individuals who continue to possess firearms despite being prohibited from doing so. (Penal Code § 30010.) DOJ states that its special agents have trained approximately 500 sworn local law enforcement officials in 196 police departments and 35 sheriff's departments on how to use the database during firearms investigations. The Department states it has also conducted 50 training sessions on how to use the vehicle-mounted California Law Enforcement Telecommunications System terminals to access the database.

---

[2] Because long guns are not required to be registered, the list of firearms in an armed prohibited person's possession would likely not include long guns.

(More)

(http://ag.ca.gov/newsalerts/release.php?id=1505&year=2007&month=12)

Recently, the New York Times reported on California's Armed Prohibited Persons File and the problems it seeks to address:

> By law, Roy Perez should not have had a gun three years ago when he shot his mother 16 times in their home in Baldwin Park, Calif., killing her, and then went next door and killed a woman and her 4-year-old daughter.

> Mr. Perez, who pleaded guilty to three counts of murder and was sentenced last year to life in prison, had a history of mental health issues. As a result, even though in 2004 he legally bought the 9-millimeter Glock 26 handgun he used, at the time of the shootings his name was in a statewide law enforcement database as someone whose gun should be taken away, according to the authorities.

> The case highlights a serious vulnerability when it comes to keeping guns out of the hands of the mentally unstable and others, not just in California but across the country.

> In the wake of the Tucson shootings, much attention has been paid to various categories of people who are legally barred from buying handguns — those who have been "adjudicated as a mental defective," have felony convictions, have committed domestic violence misdemeanors and so on. The focus has almost entirely been on gaps in the federal background check system that is supposed to deny guns to these prohibited buyers.

> There is, however, another major blind spot in the system.

> Tens of thousands of gun owners, like Mr. Perez, bought their weapons legally but under the law should no longer have them because of subsequent mental health or criminal issues. In Mr. Perez's case, he had been held involuntarily by the authorities several times for psychiatric evaluation, which in California bars a person from possessing a gun for five years.

> Policing these prohibitions is difficult, however, in most states. The authorities usually have to stumble upon the weapon in, say, a traffic stop or some other encounter, and run the person's name through various record checks.

> California is unique in the country, gun control advocates say, because of its computerized database, the Armed Prohibited Persons System. It was created, in part, to enable law enforcement officials to handle the issue pre-emptively, actively identifying people who legally bought handguns, or registered assault weapons, but are now prohibited from having them.

(More)

The list had 18,374 names on it as of the beginning of this month — 15 to 20 are added a day — swamping law enforcement's ability to keep up. Some police departments admitted that they had not even tried.

\* \* \* \* \* \* \*

The state Justice Department's firearms bureau does have a small unit, with 20 agents, that tracks down people on the list. Last year, it investigated 1,717 people and seized 1,224 firearms.

The list is growing far faster, however, than names are being removed. "We're just not a very big bureau," Mr. Lindley said. "We do the best we can with the personnel that we have."

The bureau is planning a sweep this spring focused on people on the list for mental health reasons. Last summer, a man from the Fresno area who had recently been released from a mental health facility was found to possess 73 guns, including 17 unregistered assault rifles.

In the case of Mr. Perez, Lieutenant Cowan, of Baldwin Park, said he learned that state agents had been scheduled to visit Mr. Perez to confiscate his weapon — two weeks after the rampage took place.

(*States Struggle to Disarm People Who've Lost Right to Own Guns*, By Ed Connolly and Michael Luo, New York Times, Feb. 5, 2011.)
http://www.nytimes.com/2011/02/06/us/06guns.html?_r=1

3.  What This Bill Would Do

As noted above, current law establishes a mechanism whereby DOJ cross-references persons who are prohibited from possessing a firearm with records of persons who have purchased firearms, and any "prohibited person" who is listed as a firearm owner goes in the Prohibited Armed Persons File. DOJ and local law enforcement agencies can utilize that list to investigate firearms violations and seize firearms from prohibited persons.

Current law provides that DOJ may require licensed firearms dealers to charge a fee, as specified, in connection with firearm sales. These fees are deposited in the Dealer Record of Sale (DROS) Special Account. DROS funds may be used to reimburse DOJ for the costs associated with funding DOJ firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms, as specified. (Penal code §§ 28225, 28230, 28235.) It is somewhat unclear under current law whether DROS funds could be used to reimburse DOJ for its enforcement efforts related to the Armed Prohibited Persons File. SB 819 would state that DROS funds may be used by DOJ for

(More)

enforcement activities related to the *possession* as well as the sale, purchase, loan, or transfer of firearms..0  This would clarify that DOJ is permitted to use DROS funds to pay for its efforts to retrieve unlawfully possessed firearms and prosecute individuals who possess those firearms despite being prohibited by law from doing so.

SHOULD IT BE SPECIFIED THAT DROS FUNDS MAY BE USED TO FINANCE DOJ'S ENFORCEMENT OF LAWS REGARDING THE UNLAWFUL POSSESSION OF FIREARMS?

4.   Argument in Support

The California Chapters of the Brady Campaign to Prevent Gun Violence states:

> The Dealers' Record of Sale (DROS) fee is charged by the California Department of Justice (DOJ) for most firearm transfers.  The fees reimburse DOJ for expenses incurred related to the DROS process, including conducting the background check of prospective firearm purchasers.  The DROS fees are deposited in the DROS Special Account of the General Fund and are available, upon appropriation by the Legislature, for expenditure by DOJ to offset specified costs.

> Existing law provides that DROS fees may also be used to fund firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms.  SB 819 would additionally authorize using the DROS fess for regulatory and enforcement activities related to the possession of firearms.  It is important to note that SB 819 does not create a new class of persons prohibited from purchasing or possessing firearms.  The bill would simply help DOJ better enforce existing firearm laws and ensure that dangerous individuals who have lost their gun rights are not in possession of firearms.  SB 819 would not impose a cost to the state general fund, but would allow DROS funds, as approved by the regular budget process, to be used for certain firearm enforcement programs.

> Specifically, SB 819 seeks to allow a portion of the annual surplus of DROS funds to be expended on DOJ's Armed and Prohibited Persons System (APPS) Program.  The APPS database maintained by DOJ contains information on persons who have purchased handguns and subsequently become prohibited by law from purchasing or possessing firearms.  Law enforcement can use this information to disarm persons who may be in the database as a result of a felony or violent misdemeanor conviction, a commitment to a mental health facility, or the result of a domestic violence restraining order for which they failed to surrender their firearm.

> The California Brady Chapters pushed for full implementation of the APPS program under Attorney General Brown and from July 1, 2007 to September 30,

(More)

SER036

2010, DOJ conducted 5,762 APPS investigations, resulting in the seizure of 5,985 firearms. A partial review of investigations by BOF indicates that approximately 40% of all APPS investigations results in the seizure of at least one firearm.[i] As of March 3, 2010, there were 17,134 armed and prohibited persons in the APPS database. This group of prohibited persons was believed to be in possession of 29,358 handguns and 1,514 assault weapons.[ii] By November 1, 2010, the numbers had increased to 18,166 prohibited persons in the APPS database, with 33,019 handguns and 1,555 assault weapons associated with the prohibited persons.[iii] (There is no data on long guns owned by prohibited persons since long gun records are not maintained in the California database.) Despite the investigation and seizure of almost six thousand firearms, the number of prohibited persons with firearms in APPS is growing due to the fact that gun owners are becoming prohibited faster than DOJ and local law enforcement agencies can conduct investigations and seizure of the firearms.

Local law enforcement agencies are provided monthly information regarding the armed and prohibited persons in the agency's jurisdiction. However at the present time, many agencies do not have the resources or personnel to work the APPS cases and rely on assistance from DOJ's criminal intelligence specialists and special agents. In today's environment of shrinking budgets, it is important to find alternative ways to fund the state's important public safety programs.

5.  Argument in Opposition

The National Shooting Sports Foundation, Inc. states:

While NSSF supports keeping firearms out of the hands of persons who are prohibited from possessing firearms, it opposes taking the money to fund this activity from the Dealers Record of Sale (DROS) Special Account of the General Fund.

The money paid into the DROS fund by a prospective purchaser or other transferee of a firearm, is a fee to pay for the costs of a criminal and mental history background check to determine the person's eligibility to lawfully possess a firearm.

The DROS fee is not a regulatory fee, tax license or other form of non-user charge. NSSF believes that the DROS fund has often been improperly used to fund non-background check activities of the Department of Justice (DOJ).

Since the use of DROS fees for the purposes of SB 819 would be to use them in the same manner as a tax, the bill should require a 2/3's vote of each house of the Legislature for passage.

(More)

If the bill were to be amended to designate a different source of funding, NSSF would remove its opposition and likely support the bill. NSSF does not support unfunded legislation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

[i]   Data provided by the CA DOJ, November 2, 2010.
[ii]  Data provided by the CA DOJ, March 4, 2010.
[iii] Data provided by the CA DOJ, November 2, 2010.

1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   STEPAN A. HAYTAYAN, State Bar No. 205457
    Supervising Deputy Attorney General
3   ANTHONY R. HAKL, State Bar No. 197335
    Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone: (916) 322-9041
6    Fax: (916) 324-8835
     E-mail: Anthony.Hakl@doj.ca.gov
7   *Attorneys for Defendants*

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| **BARRY BAUER, STEPHEN WARKENTIN, NICOLE FERRY, LELAND ADLEY, JEFFREY HACKER, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION, HERB BAUER SPORTING GOODS, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA HARRIS, in Her Official Capacity as Attorney General of the State of California; STEPHEN LINDLEY, in His Official Capacity as Acting Chief for the California Department of Justice, and DOES 1-10,**<br><br>Defendants. | 1:11-cv-01440-LJO-MJS<br><br>**DECLARATION OF ANTHONY R. HAKL IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br><br>Date:  February 26, 2014<br>Time:  8:30 a.m.<br>Dept.:  4, 7th Floor<br>Judge:  Hon. Lawrence J. O'Neill<br>Trial Date:  March 24, 2015<br>Action Filed:  August 25, 2011 |

1

1

### DECLARATION OF ANTHONY R. HAKL

2     1.    I am a Deputy Attorney General for the Office of the Attorney General in the

3  California Department of Justice located in Sacramento, California. I am the attorney of record

4  for Kamala D. Harris and Stephen Lindley ("Defendants"). I make this declaration in support of

5  Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication. I have

6  personal knowledge of the facts stated in this declaration, and if called as a witness, I could and

7  would competently testify to them.

8     2.    Attached hereto as Exhibit A is a true and correct copy of Defendant's Response to

9  Plaintiff's Special Interrogatories, Set One.

10     3.    Attached hereto as Exhibit B is a true and correct copy of Defendant's Response to

11  Plaintiff's Request for Production of Documents, Set One.

12     4.    Attached hereto as Exhibit C is a true and correct copy of Defendant's Amended

13  Response to Plaintiff's Special Interrogatories, Set Two.

14     5.    Attached hereto as Exhibit D is a true and correct copy of Defendant's Response to

15  Plaintiff's Request for Production of Documents, Set Two.

16     6.    Attached hereto as Exhibit E is a true and correct copy of Defendant's Amended

17  Responses to Plaintiff's Request for Admissions, Set One.

18     7.    Pursuant to Local Rule 133(j) and 2501.(a) a true and correct copy of the Deposition

19  of Stephen J. Lindley is being submitted to chambers via email.

20     8.    Attached hereto as Exhibit F is a true and correct copy of the chaptered version of SB

21  140 and accompanying analyses of SB 140 by the Assembly Committee on Appropriations and

22  the Senate Committee on Budget and Fiscal Review. I printed these documents from the

23  government web site http://www.leginfo.ca.gov/.

24     I declare under penalty of perjury under the laws of the State of California and the United

25  States of America that the foregoing is true and correct of my own personal knowledge, and that

26  this declaration is executed in Sacramento, California, this 20th day of January, 2015.

27

28

2

SER040

1   Dated:  January 20, 2015                    Respectfully submitted,

2                                               KAMALA D. HARRIS
                                                Attorney General of California
3                                               STEPAN A. HAYTAYAN
                                                Supervising Deputy Attorney General
4

5                                               /s/ Anthony R. Hakl
6                                               ANTHONY R. HAKL
                                                Deputy Attorney General
7                                               Attorneys for Defendants

8   SA2011102315
    Dec of ARH in Sup of MSJ.doc
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Declaration of Anthony R. Hakl in Support of Defendants' Motion for Summary Judgment, or in the Alternative
Summary Adjudication  (1:11-cv-01440-LJO-MJS)

SER041

1  common, as only about one in five initial attempts is successful. SUF No. 97. Agents sometimes

2  drive up to 50-100 miles to attempt a contact. SUF No. 98. And attempts to make contact with

3  targets are made at "all hours of the day and night" depending on what the agents believe will

4  provide "the best chance to [] make contact with the offender." SUF Nos. 99-100.

5       If an APPS investigation results in the identification of a firearm in the possession of a

6  prohibited person, all firearms in the suspect's possession will be confiscated, and the suspect

7  may be arrested. SUF Nos. 106, 108. This is true for both firearms specifically identified on the

8  APPS List and firearms that are not. SUF No. 107.

9       APPS Enforcement Team agents' duties do not necessarily end once a firearm is collected

10  from someone on the APPS List. When a firearm is obtained by an APPS Enforcement Team

11  agent during a contact, an "investigative report" is made, SUF No. 109, and the firearm is booked

12  into an evidence storage facility by a Department Property Controller, SUF No. 110. The team

13  may take the suspect to the county jail. SUF No. 111. Agents also present cases to district

14  attorneys, help to prepare cases, and testify in court. SUF No. 112.

15       While the Department claims that 3,000 people a year are added to the APPS List, SUF

16  No. 70, it also claims that it performed 4,156 APPS investigations in 2013, SUF No. 113. From

17  those investigations, the Department claims to have seized 3,548 firearms. SUF No. 114. This

18  does not mean that 3,548 APPS investigations resulted in the Department seizing firearms, as

19  some surely involved the seizure of multiple firearms from a single individual. SUF No. 115. The

20  only statistic Plaintiffs have as to what percentage of APPS investigations involve the seizure of

21  firearms is from SB 819's legislative history, which claimed it is 40% of them. SUF No. 117. This

22  means that approximately 2,494 of the 4,156 APPS investigations the Department conducted in

23  2013 were unsuccessful. SUF Nos. 113, 117.[5]

24  **III.   THE USE OF DROS FEE REVENUES**

25       Penal Code sections 28225(b)(1)-(10) and 28230 authorize the Department to use

26

27       [5] These are similar numbers to the pre-APPS era. Between the years 1998 and 2000, there
28  were on average approximately 6,000 arrests and 2,500 convictions a year in California for
    prohibited firearm possession. SUF No. 116.

9

revenues from the DROS Fee to fund various activities, none of which are challenged here. SUF No. 32. Additionally, section 28225(b)(11) authorizes the Department's use of DROS Fee revenues to fund "the estimated reasonable costs of [Department] firearms-related regulatory and enforcement activities related to the sale, purchase, possession, loan, or transfer of firearms." SUF No. 33. The dispute in this matter is over the use of DROS Fee revenues being used to fund activities concerning the "possession" of firearms specifically, and more specifically, their use for funding APPS activities.

Prior to January 1, 2012, section 28225(b)(11) [former section 12076(e)(10)][6] did not provide for expenditure of DROS Fee revenues on regulations or enforcement activities related to the "possession" of firearms. SUF No. 34. Accordingly, prior to Fiscal Year 2012-2013, the Department's activities concerning the mere possession of firearms were not paid for from the DROS Special Account at all, but were instead paid for mostly with money from the General Fund. SUF Nos. 35-36.

Within a few months of her election to the office of California Attorney General, however, Defendant Harris sponsored and the Legislature passed Senate Bill 819 (hereinafter "SB 819"), which added "possession" to section 28225(b)(11)'s list of activities DROS Fee revenues could fund. SUF Nos. 37-38. The express purpose of SB 819 was to authorize the Department to use the millions of dollars of surplus DROS Special Account (i.e., DROS Fee) revenues, rather than General Fund monies, to pay for APPS operations. SUF No. 39.

In passing SB 819 (Ex. Q), the Legislature expressly found and declared that:

(d) Each day, the list of armed prohibited persons in California grows by about 15 to 20 people. There are currently more than 18,000 armed prohibited persons in California. Collectively, these individuals are believed to be in possession of over 34,000 handguns and 1,590 assault weapons. The illegal possession of these firearms presents a substantial danger to public safety.
. . . .
(g) Rather than placing an additional burden on the taxpayers of California to fund enhanced enforcement of the existing armed prohibited persons program, it is the intent of the Legislature in enacting this measure to allow the DOJ to utilize the [DROS Special] Account for the additional, limited purpose of funding

---

[6] Pursuant to the Non-Substantive Reorganization of California's Deadly Weapons Statutes, various code sections were renumbered. The previous section for each referenced Penal Code section is bracketed.

10

SER043

# CERTIFICATE OF SERVICE

Case Name: **Bauer, Barry et al. v. Kamala D. Harris, et al. (APPEAL)**     No.    **15-15428**

I hereby certify that on <u>October 15, 2015</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**APPELLEES' SUPPLEMENTAL EXCERPTS OF RECORD**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>October 15, 2015</u>, at Sacramento, California.

<table>
<tr><td>Tracie L. Campbell</td><td>s/ Tracie Campbell</td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SA2015102108
pos ser.doc